UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **JAMES BOLAND, as Trustee of, and on behalf of, the Bricklayers & Trowel Trades International Pension Fund,** *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>**THERMAL SPECIALTIES, INC., and THERMAL SPECIALTIES ACQUISITIONS COMPANY, LLC,**<br><br>    Defendants. | Civil Action No. 11-2274 (JEB) |

**MEMORANDUM OPINION**

When Thermal Specialties Acquisition Company, LLC, acquired Thermal Specialties, Inc., an industrial-services company, TSAC refused to fulfill TSI's collective-bargaining obligations to its union members. In particular, TSAC chose to cease contributions to employee pension funds. Plaintiffs, who are Trustees of several funds, then sued both companies, arguing that TSAC was merely TSI's "alter ego" and that it was thus bound by the collective-bargaining agreements between TSI and a local union. This Court rejected the Trustees' claim, however, finding that because TSAC's ownership was "decidedly different" from TSI's, alter-ego doctrine did not apply. See Boland v. Thermal Specialties, Inc., & Thermal Specialties Acquisition Co. (Boland I), 2013 WL 3043407 (D.D.C. June 19, 2013), at *1. As a result, the Court granted TSI's and TSAC's Motions for Summary Judgment, holding that Defendants were not liable for delinquent fringe-benefit contributions owed under the agreements.

TSI and TSAC have now filed separate Motions asking this Court to award them attorney fees pursuant to § 502(g)(1) of the Employee Retirement Income Security Act of 1974, 29

1

U.S.C. § 1132(g)(1). TSI requests fees of almost $140,000, and TSAC asks for more than $60,000. The Trustees oppose those requests. Because the Court concludes that neither TSI nor TSAC is entitled to fees, it will deny the Motions.

I. **Procedural Background**

The facts of this case are largely set forth in Boland I. See 2013 WL 3043407, at *1-3. In brief, Robert and Paula Caffey sold their family company, TSI, to Mitchell Myers, sole proprietor of TSAC and a former employee of TSI. Upon acquiring the company, Myers decided that TSAC would no longer be bound by TSI's union obligations. Of particular interest here, this meant that TSAC would no longer contribute to employee pension funds.

Just weeks after the sale, the Union filed suit with the National Labor Relations Board, alleging that TSAC's decision constituted an unfair labor practice because TSAC was an alter ego of TSI and therefore bound by TSI's existing collective-bargaining agreements. See TSI MSJ, Exh. 31 (NLRB Charge No. 17-CA-61737 (July 27, 2011)). Both the Acting Regional Director of NLRB Region 17 and NLRB's General Counsel ruled against the Union. See Pls. MSJ, Exh. R (Letter from Naomi L. Stuart, Acting Reg'l Dir., NLRB Region 17, to Thomas F. Birmingham (Sept. 28, 2011)); id., Exh. S (Letter from Lafe E. Solomon, Acting Gen. Counsel, NLRB, to Birmingham (Dec. 22, 2011)). Plaintiff Trustees then filed suit with this Court based on the same alter-ego theory, seeking to hold the companies jointly and severally liable for deficient pension contributions since July 1, 2011. Although Plaintiffs, who were not parties to the NLRB case, argued that discovery had unearthed new and damning evidence of TSI's and TSAC's wrongdoing, this Court granted Defendants' Motions for Summary Judgment. TSI and TSAC have now moved for attorney fees.

II. **Legal Standard**

ERISA includes several attorney-fee provisions. For example, an award of attorney fees is mandatory for certain plaintiffs prevailing on an ERISA delinquent-contribution claim. See 29 U.S.C. § 1132(g)(2) (In any action "by a fiduciary for or on behalf of a plan to enforce [the delinquent-contribution provision, 29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action."). When it is the defendant (or a plaintiff not covered by paragraph (g)(2)) that prevails on the merits, on the other hand, its motion for attorney fees is governed by a different – and discretionary – provision: § 502(g)(1) of ERISA. That provision allows, but does not require, the Court to award attorney fees to either party. See 29 U.S.C. § 1132(g)(1) ("In any action . . . other than [one brought under paragraph (g)(2)] . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). As Defendants have successfully defended the suit here, therefore, the Court may award fees if it sees fit to do so.

In making such a determination, under the prevailing standard in this Circuit, the Court must consider the five so-called Eddy factors, including: (1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy an award; (3) the deterrent effect of the award; (4) the value of the victory and the significance of the legal issue involved; and (5) the relative merits of the parties' positions. Eddy v. Colonial Life Ins. Co. of America, 59 F.3d 201, 206 (D.C. Cir. 1995). None of these factors is dispositive: they "are neither exclusive nor quantitative, thereby affording leeway to the district courts to evaluate and augment them on a case-by-case basis." Id.

Nonetheless, "[a]lthough the five factors . . . do not explicitly differentiate between plaintiffs and defendants, consideration of these factors will seldom dictate an assessment of attorneys' fees against ERISA plaintiffs." Marquardt v. North American Car Corp., 652 F.2d

3

715, 719-20 (7th Cir. 1981). This is because the "culpability" of a losing plaintiff "significantly differs" from that of a losing defendant: "A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found culpable, but may be only in error or unable to prove his case." Id. at 720 (internal quotation marks omitted). As a result, Plaintiff benefit plans are "more likely than employers to recover [attorney fees]" in an ERISA dispute. Carpenters So. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984).

Far from thwarting Congress's purpose in enacting § 502(g)(1), this bias toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith and to thus promote the interests of plan beneficiaries and allow them to enforce their statutory rights. See Meredith v. Navistar Int'l Transp. Corp., 935 F.2d 124, 128-129 (7th Cir. 1991) ("[W]e must keep in mind ERISA's essential remedial purpose: to protect beneficiaries of pension plans. Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose.") (internal quotation marks omitted).

Bearing these caveats in mind, the Court may now turn to an analysis of the aforementioned factors.

**III.    Analysis**

   A. Bad Faith or Culpability

The first Eddy factor – bad faith or culpability – weighs in favor of Plaintiffs. This factor "focuses not on the relative merits of the parties' legal arguments and factual contentions, but on the nature of the offending party's conduct." Eddy, 59 F.3d at 209. Although "a party's

4

litigation posture may affect the evaluation of the first factor," id., the relative merits of the parties' arguments in litigation "constitute[] the fifth factor and should not be confused with the first." Id. at 209-10 (citation omitted). Instead, a party moving for attorney fees pursuant to §502(g)(1) must demonstrate "evidence of intentional or reckless conduct" to support a finding of bad faith. Id; see also Cline v. Industr. Maintenance Eng'g & Contracting Co., 200 F.3d 1223, 1236 (9th Cir. 2000) ("[I]n order to avoid a finding of bad faith . . . , plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim."); DeVoll v. Burdick Painting, Inc., 35 F.3d 408, 414 (9th Cir. 1994) (denying appellee's request for attorney fees under ERISA because "Appellants' claims were neither frivolous nor made in bad faith").

Defendants contend that the Trustees brought their ERISA case in bad faith. See TSAC Mot. at 4 (arguing that Trustees' "motives in filing suit are extremely questionable"). In support of this claim, they point out that "[f]or the most part, the evidence in this case is undisputed." See TSI Mot. at 5 (quoting Boland I, 2013 WL 3043407, at *1). They assert, moreover, that the suit "followed an unsuccessful attempt by the Union to assert an identical argument in a charge filed with the NLRB" and that this Court adopted much of the NLRB's reasoning. Id. Finally, Defendants report that Plaintiffs over-claimed during briefing on the merits before this Court when they announced that they had "unearthed evidence unavailable to the NLRB that extinguishes any doubts about common ownership." Id.

What Defendants do not provide, however, is any evidence that Plaintiffs lacked at least an objectively reasonable belief that they might prevail, or that their motivation for filing suit was "questionable." Instead, they spend pages attempting to convince the Court that they had the better of the case on the merits. As an initial matter, it is true that most of the facts in this case are not in dispute. If courts were to find bad faith whenever two parties agreed on the

5

underlying facts, however, our system would run perilously close to one in which a losing plaintiff always pays, even if he brought suit due to an honest disagreement about the state of the law. See, e.g., DeVoll, 35 F.3d at 414 (denying appellee's request for attorney fees under ERISA because "[a]ppellants' claims were neither frivolous nor made in bad faith, and were supported by existing out-of-circuit law or good faith arguments to extend, modify, or reverse the law of this Circuit"). Indeed, the main <u>legal</u> issue in this case – whether the particular facts of the case supported a finding that TSAC was TSI's alter ego – was hotly disputed: this Court noted in its Opinion on the merits, for example, that "TSI and TSAC satisfy many of the [alter-ego] factors." Boland I, 2013 WL 3043407, at *7. It was only the lack of common ownership that did Plaintiffs' case in. Because common ownership is "not an absolute prerequisite to a finding of alter ego status, [although] it weighs heavily in the alter ego determination," id., it would be a step too far to say that Plaintiffs' case was frivolous.

In addition, the fact that the <u>Union</u> had asserted a similar alter-ego argument at the NLRB is unhelpful to Defendants for several reasons. First, it is important to note that Plaintiffs did not bring the NLRB case – the Union did. The Union brought that suit, furthermore, under the National Labor Relations Act, which is a different statute from the one Plaintiffs relied on before this Court. If there were always bad faith in a party's decision to sue in federal court after receiving an adverse ruling at the administrative level, of course, access to the courts would be unnecessarily curtailed.

Defendants marshal one argument that could plausibly support a claim of bad faith: the allegation that Plaintiffs misrepresented their case when, in their merits brief, they suggested that they had unearthed new evidence that would provide smoking-gun proof that TSAC was an alter ego of TSI. See Boland I, 2013 WL 3043407, at *4. This argument fails, however, because

Plaintiffs did bring new evidence on which the Union had not relied before the NLRB – namely, evidence that Myers and the Caffeys had signed a series of "partnership/equity agreements" long before Myers bought TSI. See Pls. Opp. at 5. That such evidence failed to change the outcome of the case does not mean Plaintiffs' decision to highlight the evidence was necessarily driven by an improper motive. In any event, the law does not require new evidence for an ERISA plaintiff to proceed into federal court.

A losing case is not bad faith. This factor weighs in favor of Plaintiffs.

B. Ability To Satisfy an Award

Next, the Court must consider the Trustees' ability to satisfy an award of attorney fees. See Eddy, 59 F.3d at 206. As Judge Raymond Randolph noted in his dissent in Eddy, "In the typical ERISA suit between a corporate defendant and an individual plaintiff, it is easy to see how this [factor] will come out." Id. at 211. Judge Randolph, of course, meant to imply that a losing defendant corporation would usually be able to satisfy an award granted to prevailing plaintiffs. It is perhaps just as easy to see that this factor will usually weigh against the typical losing plaintiff fund.

This case is no exception. Both TSI and TSAC go into some detail regarding the Plans' ability to satisfy an award of attorney fees, see TSI Mot. at 6; TSAC Mot. at 5, both noting that one Plaintiff fund has net assets of over $1 billion. Plaintiffs respond that, "like many other funds, the Plaintiff Funds have suffered from bad markets over much of the past decade." See Pls. Opp. at 7. They go on to note that the Fund analyzed by Defendants is in "endangered status" because its assets are not projected to cover a sufficient percentage of benefits for the coming year. Id. at 7 (citing Opp., Exh. A (Declaration of David Stupar), ¶ 6). Despite their protestations to the contrary, Plaintiffs are in a position to satisfy an award of attorney fees.

7

With net assets in the billions of dollars and income in the low eight figures, an award of under $200,000 would hardly be crippling. The second factor, therefore, weighs in favor of Defendants.

### C. Potential To Deter Future Violations

The Court third examines the potential for an award of attorney fees to "deter not only similar future ERISA violations but also delayed or otherwise inadequate detection and resolution of such violations." Eddy, 59 F.3d at 207. "The broad nature of the . . . deterrence factor arises from the statutory purpose to protect the interests of plan participants and their beneficiaries." Id. TSAC, perhaps tellingly, does not analyze the deterrence factor in its Motion. See TSAC Mot. at 5 (concluding that deterrence factor "does not apply"). TSI, on the other hand, does its best to force the factual circumstances of this case into the deterrence rubric, arguing that an award of fees would deter funds from pursuing vexatious litigation in the future. See TSI Mot. at 6-7. The weight of the case law, however, is squarely in favor of Plaintiffs.

In enacting ERISA and its subsequent amendments, Congress focused heavily on the well-being of pension plans. That the Eddy court relied on that purpose when applying the deterrence factor, see id. at 207, suggests that the factor is, for Defendants, at best inapposite to an analysis of their claim for attorney fees. At worst, it augurs in favor of Plaintiffs. As the court noted in Carpenters Southern, an award of fees to a defendant corporation will usually "penalize trustees for seeking to enforce employer obligations under ERISA," Carpenters Southern, 726 F.2d at 1416, an outcome that runs contrary to ERISA's purpose. See Eddy, 59 F.3d at 207. TSI argues that this deterrence is warranted, as it will prevent funds from pursuing frivolous lawsuits in the future. See TSI Mot. at 6-7. Such deterrence is unnecessary, though, because fund Trustees are already sufficiently deterred from pursuing frivolous suits, both

8

because they do not personally gain from victory and because the funds must pay their own fees to pursue ERISA claims.  See Carpenters, 726 F.2d at 1416 ("[F]ee awards . . . will be less often justified for employers than for trustees . . . [because] Plaintiff-trustees . . . generally will be sufficiently deterred from instituting vexatious suits by the absence of personal gain therefrom and the likelihood that they will have to pay their own fees and costs should they not prevail."); Marquardt, 652 F.2d at 721 ("[I]t is generally sufficient that plaintiff bears his own attorneys' fees and costs to deter institution of a frivolous or baseless suit.").

In fact, where, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third Eddy factor likely is not merely neutral, but weighs strongly against granting fees to the prevailing defendant.  Awarding fees in such a case would likely deter beneficiaries and trustees from bringing suits in good faith for fear that they would be saddled with their adversary's fees in addition to their own in the event that they lost on the merits.  As numerous courts in other circuits have noted, "Congress intended the fee provisions of ERISA to encourage beneficiaries to assert their rights without fear of being responsible for the fees and costs of their opponent's attorneys if they failed to prevail."  Gibbs v. Gibbs, 210 F.3d 491, 505 (5th Cir. 2000).  To saddle ERISA plaintiffs with the threat of a fee award for nothing more than losing in court would undermine that essential remedial purpose.

      D.  Value of Victory and Significance of Legal Issue Involved

The fourth Eddy factor requires the Court to consider whether the actions of the party asking for fees – here, Defendants – "conferred a common benefit by making it less likely that plan participants in [the plaintiff's] predicament will have to litigate their claims and easier for them if they or their beneficiaries do."  Eddy, 59 F.3d at 209.

9

This consideration, though, is not typically relevant to a defendant corporation's motion for attorney fees. Indeed, the value of the suit to plan participants and the resolution of important legal questions are "primarily relevant only to whether plaintiffs should be awarded attorneys' fees," Marquardt, 652 F.2d at 721 (emphasis added), as it is plaintiffs who "confer[] a common benefit" by bringing suit. Id. To the extent that the present dispute can be shoehorned into the analysis, though, it weighs in favor of Plaintiffs and against an award of fees. After all, only "[a] successful suit to enforce ERISA will generally benefit the plan's participants," see Carpenters Southern, 726 F.2d at 1416, and "the resolution of significant legal questions under ERISA will often depend on a plaintiff's initiative in bringing suit." Id. Of course, if a lack of value to plan beneficiaries were dispositive, no defendant corporation could ever win fees in an ERISA case, and that would improperly render superfluous the "any party" language in § 502(g)(1). Still, to require Plaintiffs to pay Defendants' fees without strong evidence of bad faith would deter such suits and make it less likely that trustees will bring valuable suits in the future and that ERISA's goals will be served. See, e.g., Flynn v. Ohio Building Restoration, Inc., 317 F. Supp. 2d 22 (D.D.C. 2004). On balance, then, this factor favors Plaintiffs.

### E. Relative Merits of Parties' Positions

"[I]n evaluating the fifth factor, the relative merits of the parties' positions, courts should be careful neither to penalize trustees for seeking to enforce employer obligations under ERISA nor to encourage employers to be indifferent to their obligations." Carpenters Southern, 726 F.2d at 1416. As the Court has already noted, Plaintiffs' claims do not approach the level of bad faith. In fact, although the Court ultimately ruled for Defendants in Boland I, see 2013 WL 3043407, both sides' positions had some merit. This factor, therefore, tilts toward Plaintiffs.

### IV.   Conclusion

When considered together, the Eddy factors clearly weigh in favor of Plaintiffs. As a result, the Court will issue a contemporaneous Order denying Defendants' Motions for attorney fees.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: Sept. 5, 2013